***********
The Full Commission has reviewed the prior Opinion and Award base upon the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award of the Deputy Commissioner. The Full Commission MODIFIES and AFFIRMS the Opinion and Award of Deputy Commissioner Gregory and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the parties at all relevant times.
3. At the time of the alleged injury, plaintiff was earning $8.70 per hour or $348.00 per week, subject to verification by the Form 22 that was submitted by the parties and stipulated into evidence.
4. The date of plaintiff's alleged injury to her back is approximately December 15, 1999.
5. The VF Jeanswear, Ltd. was insured by Gallagher Bassett on December 15, 1999.
6. Employee is claiming temporary partial for three months, payment of all medical bills and time out of work as of March 29, 2000.
7. Employee-plaintiff has not returned back to full time work since March 29, 2000.
8. The parties stipulated the following into the evidence of record at the hearing before Deputy Commissioner Hoag:
(a) Stipulated Exhibit #1 — Package of medical records, consisting of 66 pages;
(b) Stipulated Exhibit #2 — Surveillance videotape
(c) Industrial Commission Forms 18, 19, 22 and 61 (stipulated to but not marked as an exhibit)
9. The issues before the Commission are whether plaintiff suffer a compensable injury by accident arising out of and in the scope of her employment with defendant; and if so, to what benefits is she entitled; and did plaintiff's failure to report her injury immediately cause defendant irreparable harm and consequently bar her claim under the Workers' Compensation Act.
 ***********
Based upon all of the evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Hoag, plaintiff, who was born on December 18, 1961, was forty years old and had a high school education. Plaintiff had worked for defendant for approximately three years in a pressing job, which was considered a production job. Plaintiff's job duties with defendant included going to get a cart with about 60 pairs of jeans on it and bringing the cart back to her workstation. Plaintiff placed jeans on a machine to be pressed and after they were pressed, plaintiff then placed the jeans on another cart. After the second cart was filled, plaintiff would push that cart back to the front of the plant.
2. Plaintiff contends that while taking a cart back to the pressing machine, the cart hit a rock and tipped to the left. Further, when plaintiff attempted to catch the cart causing her to lean over the cart in an awkward position, she felt a sharp pain in the middle of her back. Plaintiff was unable to stop the cart from falling and the cart fell to the floor and the jeans fell out of the cart. Plaintiff testified that this incident occurred in 1999 sometime before her birthday, December 18, 1999, but she cannot remember whether it occurred on December 15, 1999 or even as early as before Thanksgiving 1999. Plaintiff produced no witnesses to this incident.
3. Plaintiff did not report an injury to her supervisors, management or medical staff on December 15, 1999 or at any other time during December or November 1999. Plaintiff continued to work for defendant until she was removed from work during February 2000 for unrelated medical problems. As of this date, plaintiff had not reported an injury at work.
4. Plaintiff contends that she eventually reported a back injury to Gayle Pate, who was plaintiff's supervisor in late 1999 and early 2000. However, according to Ms. Pate, plaintiff did not report any work-related incident or back problems to her in December 1999 or January or February 2000. Rather, according to Ms. Pate, plaintiff first reported an injury in late March 2000, on a Form 19 that states that defendant first became aware of plaintiff's claim on March 28, 2000.
5. On January 5, 2000, plaintiff was seen at Stantonsburg Medical Center complaining of continued low back pain since a motor vehicle accident on December 21, 1999 and neck pain as well as numbness in her hip.
6. Thereafter, plaintiff was seen by her family physician Dr. Wallace Nelms on January 17, 2000 and February 9, 2000 but did not seek treatment for her back problems or report a work-related injury. On February 9, 2000, plaintiff was referred to Dr. Pierre LeMaire for rectal complaints unrelated to a work injury.
7. Plaintiff was taken out of work on February 9, 2000 due to her rectal complaints and surgery was scheduled by Dr. LeMaire for February 10, 2000. However, upon examination under anesthesia, surgery was unnecessary. Plaintiff did not report a work-related incident to Dr. LeMaire or complain of back problems at that time.
8. Plaintiff was again seen by Dr. LeMaire on February 25, 2000 for her rectal complaints. At that time, plaintiff complained of severe back pain with pain radiating down her legs as well as anal pain. Plaintiff was given anti-inflammatories and instructed to return in one week.
9. Plaintiff returned to Dr. LeMaire on March 3, 2000 complaining of mid-thoracic pain as well as pain radiating down both legs. Therefore, Dr. LeMaire ordered an MRI and a referral to an orthopaedist.
10. On March 6, 2000, MRIs were obtained of plaintiff's cervical, thoracic and lumbar spine, which revealed some degenerative disc disease and a disc bulge or herniation at T7-8.
11. On March 17, 2000, plaintiff was seen by Dr. Samuel St. Clair of Raleigh Neurosurgical Clinic upon Dr. LeMaire's referral. At that time, plaintiff complained of lumbar back pain with radiation into the right leg and indicated to Dr. St. Clair that she injured herself lifting something at work. Dr. St. Clair found plaintiff's exam as well as her MRIs to be normal other than a slight disc bulge at T7-8. Therefore, Dr. St. Clair recommended conservative treatment and weight loss. As part of plaintiff's conservative treatment, Dr. LeMaire prescribed physical therapy in March 2000. Plaintiff was again seen by Dr. LeMaire in April 2000 complaining of back pain and was referred to Dr. Scot E. Reeg, an orthopaedist.
12. Plaintiff first presented to Dr. Reeg on May 11, 2000 at which time she provided a history of a work-related injury while pulling on a cart filled with blue jeans in December 1999. Plaintiff complained of back pain and leg numbness. However, Dr. Reeg found plaintiff's neurological exam normal. In addition, Dr. Reeg reviewed plaintiff's MRI results, which he also found to be unremarkable with the exception of the small disc bulge at T7-8, which did not impact plaintiff's spinal cord. According to Dr. Reeg, plaintiff's bulging disc at T7-8 would not likely have contributed in any significant way to plaintiff's complaints of pain in her lower back. Dr. Reeg placed plaintiff on light-duty work after May 11, 2000 with restrictions including no lifting over 20 pounds and no repetitive bending, lifting, pushing, pulling or crawling. Dr. Reeg did not consider pushing a cart to be repetitive pushing or pulling.
13. Plaintiff presented again to Dr. Reeg on May 25, 2000 and was seen by Dr. Reeg's physician's assistant. The physician's assistant did not detect any objective sensory deficits. Plaintiff's straight leg raising tests were noted as negative. However, plaintiff's restrictions of light duty work remained until further studies could be obtained. A lumbar myelogram and post contrast CT as well as a study of the thoracic spine were obtained and plaintiff returned to Dr. Reeg on June 27, 2000. Dr. Reeg found that plaintiff had significant pain-related behavior, amplified symptoms, self-limited range of motion and lacked objective findings to explain plaintiff's complaints. Dr. Reeg could not establish a diagnosis that would account for plaintiff's complaints and felt that plaintiff could return to work as tolerated. Furthermore, Dr. Reeg recommended a functional capacity evaluation and found that plaintiff had reached maximum medical improvement.
14. In May 2000, plaintiff returned to defendant and met with David Pope and Ms. Pate. Plaintiff was offered a job in the pressing department as a top and leg presser but did not accept the position. This job included work at the waist level on something similar to an ironing board and the job duties required getting a cart filled with about 60 pairs of jeans and picking up one pair of jeans at a time. The job also involved pushing ergonomic buttons on the front of the machine at waist level to press the jeans. After the cart was emptied, the empty cart would then be pushed away. The lifting requirements of the job included several pounds and a force of seven or eight pounds is sufficient to move the cart. There was minimal bending involved and the number of carts that a worker pushes a day is in the range of seven to ten.
15. On June 26, 2001, plaintiff underwent a functional capacity evaluation (FCE), which was reviewed by Dr. Reeg on June 27, 2001. The FCE showed plaintiff had a self-limiting or inconsistent behavior and symptom amplification.
16. On September 4, 2001, plaintiff again presented to Dr. Reeg complaining of global pain in her neck, shoulders, arms, chest, back, hips, thighs, legs and feet. According to Dr. Reeg, the T-7 T-8 disc protrusion would not account for plaintiff's complaints. Based on plaintiff's subjective complaints, Dr. Reeg restricted her to sedentary work and rated her with a 2% permanent partial impairment.
17. Plaintiff has not returned to work since February 2000 except for about 20 minutes during one day. According to plaintiff, she has not attempted to locate employment.
18. Plaintiff has failed to establish by the greater weight of the medical evidence of record that she suffered a compensable injury by accident on December 15, 1999, or that there is a causal connection between her symptoms and a work-related injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence of record that she suffered a compensable injury by accident to her back by way of specific traumatic incident on December 15, 1999 or at any cognizable time during November or December 1999. N.C. Gen. Stat. §97-2(6).
2. Although defendant may not have received actual or written notice of plaintiff's claim until March 28, 2000, approximately three and one-half months after the alleged injury, the evidence of record fails to demonstrate that defendant has been prejudiced thereby. Therefore, plaintiff's claim is not barred under the notice provision of N.C. Gen. Stat. § 97-22.
3. Assuming arguendo that plaintiff did in fact suffer a specific traumatic incident to her back, she has nevertheless failed to prove by the greater weight of the medical evidence any causal connection between her complaints and any work-related injury. Click v. Pilot FreightCarriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim under the law must be, and is hereby DENIED.
2. The parties shall bear their own costs.
This the ___ day of May, 2004.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CS/kjd